# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| **MAGDLYN A. ST. CYR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-10-CV-208-KC** |
| | § | |
| **JANET NAPOLITANO,** | § | |
| **SECRETARY, DEPARTMENT OF** | § | |
| **HOMELAND SECURITY,** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

On this day, the Court considered Defendant Janet Napolitano, Secretary, Department of Homeland Security's ("Defendant") Motion for Summary Judgment ("Motion"), ECF No. 29, and Motion to Strike Plaintiff's Declaration ("Motion to Strike"), ECF No. 34. Upon due consideration, the Court finds that the Motion should be **GRANTED**. Further, Defendant's Motion to Strike is **DENIED** as moot.

## I.    BACKGROUND

Defendant moves to strike Plaintiff's declaration because the declaration contradicts her prior sworn testimony. Mot. to Strike 1. As the ruling on the Motion to Strike determines in part the facts relevant to this case, the Court considers this Motion first. However, even relying on the evidence that Defendant seeks to strike, the Court still grants summary judgment for the reasons explained below. Accordingly, the Court need not consider Defendant's Motion to Strike and denies it as moot.

The facts presented here are taken from either Plaintiff's allegations, Plaintiff's evidence, or the undisputed facts. In 1998, Plaintiff began working at the agency now known as the Department of Homeland Security ("DHS"). Def.'s Proposed Undisputed Facts ("Defendant's Facts") ¶¶ 15-17, ECF No. 28; Pl.'s Resp. to Def.'s Proposed Undisputed Facts ("Plaintiff's Facts") ¶¶ 15-17, ECF No. 31-3. Plaintiff's job duties included monitoring radio traffic, monitoring cameras, and processing checks. *See* Pl.'s Facts ¶ 18. In August 2009, Plaintiff was promoted and then performed supervisory duties. *Id.* ¶¶ 17-18.

Plaintiff is an African-American, female, over the age of forty years, and uses a wheel chair. *See* Mot. Ex. 1 (" Individual Complaint of Employment Discrimination"), at 2, ECF No. 29-3. In March of 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that DHS discriminated against her based on race, gender, age, and disability by failing to repair a handicapped accessible door at her place of work. *See* Mot. Ex. 7, at 1, ECF No. 29-10 ("EEOC Decision"); Pl.'s Facts ¶ 2. Additionally, Plaintiff stated that DHS discriminated against her when the agency failed to consistently provide her with an accommodating work console. *See* EEOC Decision 1; Pl.'s Facts ¶ 2. Finally, Plaintiff stated that one of her supervisors had intimidated her. *See* Individual Compl. of Employment Discrimination 3; Pl.'s Facts ¶ 2.

After the EEOC gave notice of final judgment denying her claims, Plaintiff filed this lawsuit. *See* Compl., ECF No. 1**;** Pl.'s Facts ¶¶ 8-10. Plaintiff seeks damages, declaratory, and injunctive relief for alleged discrimination based on Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII"), Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, as amended ("ADEA"), and

the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 *et seq.* Compl. 15-18.

Additionally, Plaintiff alleges retaliation and a hostile work environment in violation of Title VII.

*See id.* at 18.

Plaintiff's claims center around problems with a single handicapped accessible door and

her work consoles.[1] Therefore, the Court sets out those problems in detail.

### A.    The Door

Plaintiff generally worked in the Radio Room of the Department of Homeland Security's

Communications Center. *See* Mot. Ex. 6, at 11:6-8, 12:15-14:5, ECF No. 27-9, ECF No. 27-10

("Plaintiff's Deposition"). Plaintiff states that the west-side handicapped accessible door to the

Communications Center was "frequently inoperative." *See* Pl.'s Facts ¶ 26. The

Communications Center does have two other handicapped accessible doors — the front and back

doors. *See id.* ¶¶ 23, 29-30; Pl.'s Resp. to Def.'s Mot. for Summ. J. 15, ECF No. 31 ("Plaintiff's

Response"). But, Plaintiff states that the west-side door was the safest for her.[2] *See* Compl. 5.

Plaintiff states the front entrance was unsafe for her because she had to enter a code into a keypad

on a steep ramp. *See id.* However, DHS has offered evidence, which Plaintiff does not dispute,

that all three handicapped accessible ramps meet the Uniform Federal Accessibility Standards

("UFAS"). *See* Def.'s Facts ¶ 25; Pl.'s Facts ¶ 25. Moreover, Plaintiff states that she is "not

disputing the reasonable accommodation of the ramps." Pl.'s Facts ¶ 25. Plaintiff further states

the back door was unsafe for her because the inner door was too heavy for her to open. *See* Pl.'s

---

[1]    Plaintiff includes additional factual allegations in her Declaration that go beyond
the door and consoles. *See* Pl. Decl. ¶¶ 20-22. Those facts will be discussed in
Section II, Part C.

[2]    This west-side door was also the closest to Plaintiff's usual place of work. *See*
Pl.'s Facts ¶¶ 19, 26.

Resp. to Def.'s Mot. for Summ. J. Ex. 1, ¶¶ 11-12, ECF No. 31-2 ("Plaintiff's Declaration").

DHS has offered evidence, which Plaintiff does not dispute, that opening the "heavy" inner-door requires less than one pound of pressure. *See* Def.'s Facts ¶ 24; Pl.'s Facts ¶ 24. Likewise, Plaintiff concedes that another employee in a wheelchair uses the doors safely. Pl.'s Facts ¶¶ 30, 35. Finally, Plaintiff concedes that DHS "frequently" repaired the problematic west-side door, and then replaced it. *See id.* ¶¶ 27-28. And Plaintiff states that despite the problems with the door, she was able to perform to the best of her abilities at work. Pl.'s Decl. ¶ 113.

### B. Work Consoles

Plaintiff states that DHS failed to provide her with an accommodating work console on eight or nine occasions over a nine month period. *See* Pl.'s Facts ¶¶ 40, 48. A few of the work consoles do not adjust low enough to accommodate Plaintiff while in a wheelchair. *See id.* ¶ 40. Plaintiff though concedes that DHS accommodated her with an appropriate console by having Plaintiff switch consoles with a co-worker. *Id.* ¶ 50.

Assigning work consoles in Plaintiff's usual place of work, the Radio Room, was a two-step process. *See* Pl.'s Facts ¶¶ 38-44, 48, 50. A supervisor first assigned each employee to a "position." *See id.* ¶ 43. Each position consisted of one or more work consoles. *See id.* ¶ 42. If the position had more than one console, then the employee who arrived earlier could choose her preferred console. *See id.* ¶ 47. On less than ten occasions, this process led to Plaintiff sitting at a console that did not adjust low enough to accommodate her. *See id.* ¶ 48. However on each of those times, Plaintiff moved to a sufficiently adjustable console. *See id.* ¶ 50.

Plaintiff argues that the DHS should have assigned her to a specific console instead of having her switch with colleagues. *See* Pl.'s Resp. 21. Plaintiff states that switching caused

"animosity and prejudicial feelings amongst her co-workers." Compl. 10; Pl.'s Decl. ¶ 69.

Plaintiff also states that switching consoles upset her on one occasion because she had already

"placed her belongings down." Pl.'s Resp. 9. Finally, Plaintiff states that despite the problems

with the consoles, she was able to perform to the best of her abilities. Pl.'s Decl. ¶ 113.

## II.    DISCUSSION

### A.    Standard

A court must enter summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus.,*

*Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one

party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State*

*of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d

473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*,

85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of [the

record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*,

477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show

the existence of a genuine dispute, the nonmoving party must support its position with citations

to "particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory

answers, or other materials[,]" or show "that the materials cited by the movant do not establish

the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible

evidence to support the fact." Fed. R. Civ. P. 56(c). The court resolves factual controversies in

favor of the nonmoving party; however, factual controversies require more than "conclusory

allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air

Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the

court must draw all reasonable inferences in favor of the nonmoving party, and may not make

credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*,

438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530

U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

Plaintiff has asserted claims for a hostile work environment, race discrimination, gender

discrimination, age discrimination, disability discrimination, and retaliation. Compl. 15-19. The

Court addresses each in turn.

### B.      Hostile Work Environment

Defendant argues that the Court should not consider Plaintiff's hostile work environment

claim because Plaintiff did not raise a hostile work environment claim with the EEOC, and thus

did not fulfill a necessary pre-requisite. *See* Mot. 8. However, Plaintiff argues that the Court

should consider the hostile work environment claim because it grows out of her failure to

accommodate and discrimination claims. *See* Pl.'s Resp. 3. Because Plaintiff's hostile work environment claim fails on the merits, the Court need not consider these arguments.

A hostile work environment claim succeeds when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted). The conduct "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

To determine whether the conduct is objectively offensive, the court examines the totality of the circumstances. *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). Relevant factors include "the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Id.*

Courts are not enforcing a "general civility code." *Faragher*, 524 U.S. at 788. The conduct must be "extreme to amount to a change in the terms and conditions of employment." *Id.* For example, the Fifth Circuit held that a supervisor yelling at an employee, giving her sharp looks, and calling her a "liar" and a "disloyal employee" in front of her co-workers did not constitute a hostile work environment. *Ramsey v. Henderson*, 286 F.3d 264, 266-67, 269 (5th Cir. 2002). Similarly, a two hour "harangue," a mocking comment, and a statement that the employee was "like a needy old girlfriend" did not constitute a hostile work environment. *Septimus*, 399 F.3d at 612.

Here, none of the allegations rise to the level of an objectively hostile or abusive environment.  Although Plaintiff details the problems of the inadequate console and inoperative west-side door, Plaintiff presents no evidence of conduct that meets the Fifth Circuit's definition of a hostile work environment.  According to Plaintiff, the problematic console switching occurred infrequently — less than ten times over a nine month period.  *See* Pl.'s  Facts ¶¶ 40, 48.  Likewise, the problem with the west-side door only forced Plaintiff to use one of the other handicapped accessible doors.  *See id.* ¶¶ 23, 29-30.  And despite both the console and door problems, Plaintiff states she was able "to perform to the best of my abilities."  Pl.'s Decl. ¶ 113; Pl.'s Dep. 112:7-25.  In sum, these issues fail as a matter of law to create a hostile work environment because they were not frequent, severe, physically threatening, humiliating, and they did not "interfere[] with [the] employee's work performance."  *See Septimus*, 399 F.3d at 611.

Plaintiff states that her supervisor "negatively judged, ridiculed, belittled, and discriminated against [her]."  Pl.'s Resp. 7.  However, the Fifth Circuit has held that yelling at and embarrassing an employee did not constitute a hostile work environment.  *See Ramsey*, 286 F.3d at 266-67, 269.  Additionally, Plaintiff states that switching consoles caused "animosity and prejudicial feelings amongst her co-workers."  *See* Pl.'s Resp. 8, 10;  Pl.'s Facts ¶¶ 40, 48, 51.  But Plaintiff provides no evidence or specifics about her co-worker's animosity or prejudicial behavior.  As such, she fails to demonstrate the existence of a hostile work environment.  *See Wallace*, 80 F.3d at 1049 (holding general allegations without specific evidence was insufficient to establish prima facie claim of hostile work environment).  In sum, the problems with her supervisors and co-workers do not rise to the level of a hostile work environment.

## C. Discrimination Claims

Plaintiff alleges four different discrimination claims: (1) race discrimination, (2) gender discrimination, (3) age discrimination, and (4) disability discrimination. After examining the threshold issue of exhaustion and the relevant framework for discrimination claims, the Court addresses each claim in turn.

### 1. Exhaustion

Defendant argues that Plaintiff raises factual allegations to support her discrimination claims that were not first presented to the EEOC, and thus are stale. Mot. 5. Federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information" must first contact an Equal Employment Opportunity counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1).[3] After contacting the counselor, the federal employee can file an EEOC charge. *Ramsey*, 286 F.3d at 269; 29 C.F.R. § 1614.105(a). Federal employees must exhaust this administrative process before seeking court review. *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006). And the aggrieved employee must contact the EEOC for each discrete act of discrimination. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Courts

---

[3] To pursue an age discrimination claim under the ADEA, a federal employee can choose between presenting her claim to the EEOC or proceeding directly to court. *Stevens v. Dep't of the Treasury*, 500 U.S. 1, 5-6 (1991). If the federal employee chooses to submit the claim directly to court, she must give "the [EEOC] not less than 30 days' notice of the intent to file such an action . . . . [and] such notice must be filed . . . within 180 days of the occurrence of the alleged unlawful practice." 29 C.F.R. § 1614.201(a); *see also* 29 U.S.C. § 633a(d). Here, there is no evidence that Plaintiff submitted her notice within thirty days. Moreover, Plaintiff does not argue the Court should treat her ADEA claim differently. Finally, Plaintiff included age discrimination in her EEOC charge. Pl. Facts ¶ 2. Therefore the Court finds that Plaintiff presented her age discrimination claims to the EEOC and did not proceed directly to court.

should not condone lawsuits that exceed the scope of EEOC exhaustion" because that would undermine the effectiveness of the EEOC process. *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008). The EEOC administrative process only works if the parties submit the dispute to the agency, and the agency can investigate and attempt to settle the cases without the courts' involvement. *See Pacheco*, 448 F.3d at 788-89.

Plaintiff presented two basic claims to the EEOC. *See* Compl. 3; EEOC Decision 1. First, Plaintiff alleged that DHS discriminated against her based on race, gender, age, and disability when the agency frequently failed to repair a handicapped accessible door. *See* EEOC Decision 1; Pl.'s Facts ¶ 2. Second, Plaintiff alleged that DHS discriminated against her when the agency failed to consistently accommodate her with an appropriate work console. *See* EEOC Decision 1; Pl.'s Facts ¶ 2. Finally, Plaintiff alleged that one of her supervisors had intimidated her. *See* Individual Compl. of Employment Discrimination 3; Pl.'s Facts ¶ 2.

Plaintiff attempts to create factual disputes by including facts in her Declaration that go beyond the scope of her EEOC charge. These facts fit into three general categories.[4] Plaintiff states that DHS supervisors discriminated against her by (1) denying her leave while freely granting leave to others, (2) providing her with less training opportunities than others, and (3) denying her supervisory duties. S*ee* Pl.'s Decl. ¶¶ 20-22. Plaintiff cannot use these allegations to defeat summary judgment for three reasons.

---

[4]    Listing and categorizing each of Plaintiff's allegations and evidence is difficult because Plaintiff's counsel copies and pastes allegations from the Complaint and Plaintiff's Deposition without identifying which facts are relevant to each claim or legal issue. *See generally* Pl.'s Resp.; Compl. 2-14.

### a. Plaintiff does not rely on these allegations

First, Plaintiff does not appear to argue that these allegations support her claim because none of them are mentioned in her Response opposing summary judgment. Instead, Plaintiff only refers to these facts in her sworn Declaration. To show a disputed fact and defeat summary judgment, Plaintiff must cite "to particular parts of materials in the record." Fed R. Civ. P. 56(c)(1)(A). Here , Plaintiff does not mention or cite to the allegations of denied leave, less training, or less supervisory duties to oppose the exhaustion argument or support her discrimination claims. *See* Pl.'s Resp. 2-3, 24-25. Therefore, the Court will not consider them. *See* Fed R. Civ. P. 56(c)(1)(A).

### b. Time-barred

Even if the Court were to consider these allegations, many of them are time-barred. A federal employee has forty-five days to contact an Equal Employment Opportunity counselor after the "date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). In this case, the clock started forty-five days before Plaintiff contacted an Equal Employment Opportunity counselor on February 20, 2009. *See* Pl.'s Facts ¶ 1; 29 C.F.R. § 1614.105(a)(1). Therefore, the parties agree that discrete events that occurred before January 6, 2009, are not timely. *See* Pl.'s Resp. 2; 29 C.F.R. § 1614.105(a)(1); *Morgan*, 536 U.S. at 113 (holding "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."); *Ramsey*, 286 F.3d at 269. In Plaintiff's Declaration, she states that DHS supervisors wrongly denied her leave on January 24, 2007, May 30, 2008, July 23, 2008, and August 26, 2008. Pl.'s Decl. ¶ 30. All of these acts are stale because they occurred before the cutoff date of January 6, 2009.

Likewise, Plaintiff states she was denied training opportunities but provides no dates or other specifics. Plaintiff offers no evidence suggesting these allegations were timely presented to the EEOC. Therefore, the Court finds these too are stale.

Finally, Plaintiff states DHS supervisors gave her less supervisory duties on multiple occasions in 2007 and 2008. Again, all of these are stale. Plaintiff does also state DHS denied her supervisory duties in 2009. *See* Pl.'s Decl. ¶ 119. However as explained below, those are beyond the scope of the EEOC charge and investigation.

### c. Not like or related

Plaintiff argues all of these allegations are not stale because they are "like or related" to Plaintiff's other claims that were presented to the EEOC. Mot. 5. The allegations in a judicial complaint "may encompass any kind of discrimination like or related to allegations contained in the [EEOC] charge and growing out of such allegation during the pendency of the case before the Commission." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) (citations omitted). The Fifth Circuit has held that "the crucial element of a charge of discrimination is the factual statement contained therein." *Id.* at 462. And the "scope of an EEOC charge should be liberally construed" because most employees file the EEOC charge without the help of an attorney. *McClain* 519 F.3d at 273.

Courts allow related claims because the EEOC could reasonably be expected to broaden its investigations when it discovers related issues. *See id.*; *Pacheco*, 448 F.3d at 790-92. However, the EEOC cannot be expected to stumble upon unrelated claims. *See McClain*, 519 F.3d at 273. For example, in *Gamble v. Birmingham S.R.R. Co.*, 514 F.2d 678, 688 (5th Cir. 1975) (discussed in *Pacheco*, 448 F.3d at 789), the plaintiffs presented a claim to the EEOC that

a railroad employer discriminated in hiring train conductors. *See id.* at 687. When the plaintiffs presented their case in federal court, they expanded the claim to include supervisory positions — not just the position of conductor. *See id.* The Fifth Circuit held the two allegations were like or related because the plaintiff's statement "'I was not allowed to promote to conductor' implicitly includes the complaint that 'I was not allowed to promote to supervisor,' since supervisors are chosen from the ranks of conductor." *Id.* at 688. This holding makes sense because the initial EEOC investigation about the conductor position could easily have led the EEOC to investigate supervisory positions generally. *See Pacheco*, 448 F.3d at 790-92.

Here, none of these allegations of denying leave, supervisory responsibilities, and training opportunities are within the scope of Plaintiff's EEOC charge and investigation — no matter how liberally the Court construes the EEOC allegations. Plaintiff did not raise these allegations to the EEOC in her charge, and therefore the EEOC did not investigate them. *See* EEOC Decision 1. Without submitting the allegations, it was highly unlikely that the EEOC would stumble upon allegations of denying leave, less supervisory responsibilities, and less training opportunities because they have nothing in common with the submitted claims of unaccommodating consoles or a malfunctioning door. *See Pacheco*, 448 F.3d at 790-92; *Gamble*, 514 F.2d at 688.

Moreover, Plaintiff had clear notice these were unrelated claims that must be first presented to the EEOC. Plaintiff originally tried to include the allegations by requesting an amendment to her EEOC charge. *See* Mot. Ex. 4, ECF No. 29-6. However, the EEOC denied leave to amend because "these issues are not like or related," and gave Plaintiff notice that if she wished to pursue these claims she must contact the EEOC counselor within fifteen days. *Id.*

Therefore, Plaintiff knew these allegations were unrelated, and then chose to not pursue these claims with the EEOC. *See* Def.'s Facts ¶ 7; Pl.'s Facts ¶ 7.

In conclusion, the Court will not consider the allegations of denying leave, offering less training opportunities, and providing less supervisory opportunities to support Plaintiff's discrimination claims because Plaintiff has not relied on these allegations in her Response, most are untimely, and none are related to the EEOC charge.

### 2. The framework for the discrimination claims

Returning to the merits of the discrimination claims, Plaintiff contends that DHS unlawfully discriminated against her based on race, gender, disability and age. Specifically, she contends that if she "was not African-American, female, disabled, and over the age of fifty," DHS would have consistently accommodated her with a properly functioning door and work console. Pl.'s Resp. 33.

Plaintiff's discrimination claims fall under three different federal statutes. Plaintiff's claims of race and gender discrimination arise under Title VII of the Civil Rights Act of 1964. Title VII forbids an employer from discriminating against an employee because of the "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Plaintiff's claim of age discrimination arises under the Age Discrimination in Employment Act of 1967. The ADEA prohibits "arbitrary age discrimination in employment." 29 U.S.C. § 621. Finally, Plaintiff's claim of disability discrimination arises under the Rehabilitation Act. The Rehabilitation Act prohibits federal agencies from discriminating against an employee based on "her or his disability." 29 U.S.C. § 794.

Title VII was the model for both the ADEA and the Rehabilitation Act. *See* 42 U.S.C. §
2000e*;* 29 U.S.C. § 794a(a)(1); *Trans-World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121
(1985). Accordingly, under all three statutes — Title VII, the ADEA, and the Rehabilitation Act
— the Fifth Circuit applies the same general framework to discrimination claims. *See EEOC v.
Chevron Phillips*, 570 F.3d 606, 615 & n.6 (5th Cir. 2009).

A plaintiff can prove intentional discrimination with direct or circumstantial evidence.
*Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010). If a plaintiff offers circumstantial
evidence, the Fifth Circuit applies a modified *McDonnell Douglas* approach. *See Thurston*, 469
U.S. at 121 (applying *McDonnel Douglas* approach to age discrimination claim); *Chevron
Phillips*, 570 F.3d at 615 (applying *McDonnel Douglas* approach to disability discrimination
claim); *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)
(applying modified *McDonnel Douglas* approach to race discrimination claim).

In this case, Plaintiff offers circumstantial evidence of discrimination so the Court
proceeds with the modified *McDonnell Douglas* approach. The modified *McDonnell Douglas*
approach has three steps. *Jackson*, 619 F.3d at 466. First, the plaintiff must establish a prima
facie case of discrimination. *Id.* Second, if the plaintiff establishes a prima facie case, the
defendant must articulate a legitimate, non-discriminatory reason for the employment action at
issue. *Id.* Third, assuming the defendant meets this burden, the plaintiff must show that the
defendant's legitimate, non-discriminatory reasons were pretext for discrimination. *Id.*

### 3. Race and gender discrimination

Plaintiff alleges she was discriminated based on race and gender in violation of Title VII.
Plaintiff contends that if she "was not African-American, female, disabled, and over the age of

fifty," DHS would have consistently accommodated her with a properly functioning door and work console. Pl.'s Resp. 33. The Court will analyze race and gender discrimination together for three reasons. First, race and sex discrimination both arise under Title VII and have the same prima facie elements. *See McCoy v. City of Shreveport*, 492 F.3d 551, 556-58 (5th Cir. 2007). Second, Plaintiff alleges the same discriminatory conduct — namely, that DHS would have consistently accommodated her with a properly functioning door and work console if she was not African-American and female. Pl.'s Resp. 33. Third, Plaintiff and Defendant both argue the sex and race discrimination claims as one issue.[5] *See* Mot. 12-19; Pl.'s Resp. 24-25.

### a. Prima facie case

To establish a prima facie case a race discrimination under Title VII, Plaintiff must show (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) that other similarly situated employees were treated more favorably. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). Defendant argues that Plaintiff fails to establish the last two elements of the prima facie case. Mot. 15-16. The Court agrees. First, Plaintiff has failed to produce evidence that she suffered some adverse employment action. Second, Plaintiff has failed to produce evidence that other similarly situated employees were treated more favorably.

---

[5] The parties group all of the discrimination claims together in their briefs. *See* Mot. 12-19; Pl.'s Resp. 24-25. However for clarity, the Court will treat the age and disability discrimination claims separately.

### i. Adverse employment action

The Fifth Circuit has a "strict interpretation of the adverse employment element." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004).[6]  The employment action must consist of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Id.* (internal quotations omitted).  If the action "does not affect job duties, compensation, or benefits," it is not an adverse employment action. *Id.* (internal quotations omitted).

Here, Plaintiff has failed to produce evidence that she suffered an adverse employment action.  Plaintiff has not been passed over for a promotion, been fired, or lost compensation.  In fact, DHS promoted Plaintiff in August of 2009.  Pl.'s Facts ¶¶ 17-18.  Although Plaintiff details the problems with the malfunctioning door and the non-accommodating consoles, s*ee* Compl. ¶¶ 11-38, none of those problems regard "hiring, granting leave, discharging, promoting, and compensating." *See Pegram*, 361 F.3d at 282.  Nor do those allegations concern job duties or benefits.  A frequently malfunctioning door and non-accommodating consoles simply do not rise to the level of an ultimate employment decision. *See McCoy*, 492 F.3d at 556-57 (holding that placing someone on administrative leave does not qualify as an adverse employment action); *Hockman v. Westward Commc'ns*, 407 F.3d 317, 326 (5th Cir. 2004) (surveying Fifth Circuit cases and noting that actions like criticizing the employee, refusing to allow the employee to

---

[6]     The Supreme Court of the United States altered the Fifth Circuit's "adverse employment action" standard in retaliation claims. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 60, 66-67 (2006).  However, the standard remains the same for discrimination claims. *See McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007).

attend training, making verbal threats of being fired, and reprimanding an employee for not being at an assigned work station all did not constitute adverse employment actions).

Plaintiff does include allegations of diminishing training opportunities, denying her leave, and diminished supervisory opportunities that perhaps could qualify as an adverse employment action. *See* Pl.'s Decl. ¶ 20-22. However, as explained above, those allegations are stale because they were not presented to the EEOC. And moreover, Plaintiff has not cited to these events in support of her Response. *See* Pl.'s Resp. 2-3, 24-25.

In conclusion, the Court finds that Plaintiff has failed to provide any evidence of adverse employment actions. Therefore, Plaintiff cannot establish a prima facie case for race discrimination under Title VII.

### ii. Treatment compared to other similarly situated employees

Beyond failing to provide evidence of an adverse employment action, Plaintiff fails to provide evidence that DHS treated her "less favorably." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008). The Fifth Circuit requires that a plaintiff demonstrate that the employer treated a "similarly situated" employee differently under "nearly identical" circumstances. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995); *see Wheeler v. BL Dev. Cor.*, 415 F.3d 399, 406 (5th Cir. 2005).

Here, Plaintiff states that DHS failed to consistently accommodate her with a properly functioning handicapped accessible door and an adequate work console because she is African-American and female. *See* Compl. 3-15; Resp. 33. However, Plaintiff concedes the malfunctioning west-side door also affected other Radio Room employees. *See* Pl.'s Facts ¶¶ 30,

35.  Moreover, Plaintiff concedes there were always other handicapped accessible doors available to her and the other employees.  *See id.* ¶ 23.  Plaintiff states that she thinks if someone of a different race and gender complained about the door, it would have been fixed more quickly.  *See* Pl.'s Dep. 73:3-9.  But Plaintiff concedes she does not know if anyone else complained.  *See id.* at 73:13-14.  Likewise, Plaintiff has no evidence that DHS fixed something more quickly for anyone else.  In sum, Plaintiff has no evidence that DHS treated her less favorably in regard to the doors.

Plaintiff also provides no evidence that DHS treated her less favorably in regard to the work consoles.  *See* Pl.'s Decl. ¶¶ 37-72.  Plaintiff never states or cites anything in her Response that shows DHS assigned others to better consoles, or that DHS gave her inferior consoles.  After combing the Record, the Court notes that Plaintiff states in her Declaration that DHS assigned two individuals to other work locations known as outstations because of their "injury/temporary disability."  *See id.* ¶ 69.  The facts are unclear, but Plaintiff seems to suggest that DHS supervisors quickly assigned the two individuals to the outstation because they are white.  *See id.* However, Plaintiff does not indicate whether the two individuals requested the move.  *See id.* Moreover, Plaintiff does not state that she had requested a move to the outstation or that DHS denied her request.  *See id.*  The facts are even more hazy because in her deposition Plaintiff suggested she did not find the outstation accommodating.  *See* Pl.'s Dep. 89:25-90:8.  Nor does Plaintiff submit any evidence showing that these individuals were in circumstances "nearly identical" to hers.  In sum, this is not a "similarly situated" employee under "nearly identical" circumstances.  *Mayberry*, 55 F.3d 1086, 1090.  Therefore, Plaintiff cannot establish a prima facie case.

### b.    Non-discriminatory reason and pretext

Even if Plaintiff were able to establish a prima facie case, Plaintiff cannot show "that the defendant's legitimate, non-discriminatory reasons were pretext for discrimination." *See Jackson,* 619 F.3d at 466.

Plaintiff contends that DHS discriminated against her by not accommodating her with a properly functioning door and work console.  Pl.'s Resp. 33.  Defendant responds that DHS accommodated Plaintiff.  *See* Mot. 24.  Specifically, Defendant provides evidence that there were always two or three handicapped accessible doors available to Plaintiff, and DHS frequently repaired the malfunctioning west-side door.  *See* Def.'s Facts ¶ 22; Pl.'s Facts ¶¶ 22, 27.  And every time Plaintiff was unsatisfied with her work console, she was able to switch to a more accommodating console.  *See* Pl.'s Facts ¶ 50.  Therefore, Defendant has presented a legitimate, non-discriminatory reason for the employment action at issue, namely that DHS did in fact accommodate her.

Given that Defendant has met her burden, Plaintiff must show that the Defendant's stated reason was pretext for discrimination.  *Jackson*, 619 F.3d at 466.  However, Plaintiff fails to offer any evidence of pretext.  *See* Pl.'s Resp. 35.  Rather, Plaintiff simply states that "Defendant has failed to accommodate" her.  *Id.*  But Plaintiff cannot create an issue of fact with "unsubstantiated assertions."  *Little*, 37 F.3d at 1075.  Moreover, Plaintiff has admitted DHS always accommodated her with a sufficient console, and that the door problem did not impact her work performance.  *See* Pl.'s Facts ¶ 50, Pl.'s Decl. ¶ 113; Pl.'s Dep. 112:7-25.

In conclusion, the Court finds that Plaintiff's discrimination claims based upon race and gender fail even if Plaintiff presented a prima facie case.

### 4.    Age discrimination

Plaintiff also alleges she was discriminated based on age in violation of the ADEA. Because Plaintiff only offers circumstantial evidence of discrimination, the familiar modified *McDonnell Douglas* applies to her age discrimination claim as well.  *See Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010) ("While the Supreme Court has not definitively resolved whether it [applies the *McDonnell Douglas* framework] we are bound by our circuit precedent applying *McDonnell Douglas* to age discrimination cases.").  Accordingly, Plaintiff must first establish a prima facie case.

### a.    Prima facie case

Depending on the circumstances of the individual age discrimination case, the Fifth Circuit has utilized different prima facie elements.  In many cases, the Fifth Circuit requires the plaintiff show that (1) she was discharged; (2) she was qualified for the position; (3) she was within the protected class at the time of discharge; and (4) she "was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged because of . . . age." *Cal-Western Packaging Corp.*, 602 F.3d at 378.

However, in cases not involving discharge, the Fifth Circuit uses a different approach. *See Smith v. City of Jackson*, 351 F.3d 183, 185, 196 (5th Cir. 2003).  Plaintiff must show (1) she is within the protected class; (2) she is qualified for the position; (3) she suffered an adverse employment decision; and (4) she was "treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected

class." *Id.*[7] The "adverse employment decision" though must be an ultimate employment decision "such as hiring, granting leave, discharging, promoting, and compensating." *Pegram*, 361 F.3d at 282 (5th Cir. 2004); *Watkins v. Paulsen*, 332 F. App'x 958, 960 (5th Cir. 2009) (stating that "ultimate employment decision" test applies to Title VII and ADEA discrimination claims because "[e]ssentially the same framework applies to both").

Here, Plaintiff has not alleged she was discharged or replaced. Instead she alleges that she was treated less favorably. *See* Compl. 14-15. Because the parties do not dispute Plaintiff is within the protected class and qualified for the position, the focus is on the latter two elements. Plaintiff's prima facie case fails on both of these elements. First, Plaintiff cannot show that she suffered an adverse employment decision. Second, Plaintiff provides no evidence that DHS treated her less favorably than similarly situated younger employees.

### i.      Adverse employment action

Plaintiff's age discrimination claim fails for the same reasons her Title VII claims failed: Plaintiff has failed to produce evidence that she suffered an "adverse employment decision." *Smith*, 351 F.3d at 196. Plaintiff has not been passed over in hiring or promoting, been fired, or lost compensation. In fact, Plaintiff has been promoted. Pl.'s Facts ¶¶ 17-18. Plaintiff does state that DHS supervisors denied her leave, and gave her less supervisory and training opportunities. Pl.'s Decl. ¶ 20-22. However as described above, those allegations are stale because she did not

_____

[7]      These elements comport with the text of the statute that has greater reach than just hiring, firing, and replacing. The statue states: "It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).

present them or provide notice to the EEOC, and because she does not directly cite to them in support of her response to the Motion pursuant to Federal Rule of Civil Procedure 56(c). Because Plaintiff likely knew those claims are stale, Plaintiff focuses her entire Response to Summary Judgment on the malfunctioning door and the non-accommodating consoles. *See* Pl.'s Resp. 24-25. However, those complaints are not similar to ultimate employment decisions like hiring, firing, and pay. *See McCoy*, 492 F.3d at 556-57; *Hockman*, 407 F.3d at 326.

In conclusion, the Court finds that Plaintiff has failed to provide any evidence of adverse employment actions. Therefore, Plaintiff cannot establish a prima facie case for age discrimination under the ADEA.

### ii. Treatment compared to other similarly situated employees

In addition to failing to show an adverse employment action, Plaintiff cannot show she was treated "less favorably than similarly situated younger employees." *See Smith*, 351 F.3d at 196. Plaintiff cites to no evidence that she was treated less favorably than younger employees. *See* Pl.'s Resp. 25. Instead, Plaintiff seems to rely on her often repeated statement that if she "was not African-American, female, disabled, and over the age of fifty," DHS would have consistently accommodated her with a properly functioning door and work console. Pl.'s Resp. 33.[8] However, Plaintiff provides no evidence that younger workers were treated more favorably than older workers in regard to the door or consoles. Without any specifics facts showing that

---

[8]  Although Plaintiff does not cite this fact in her Response, in Plaintiff's Declaration she states that DHS approved leave for a "white female, under the age of 50 [who] is able to walk" in July of 2008 while denying her leave for a similar period. Pl.'s Decl. ¶ 73. However, as discussed earlier, allegations of denying leave from 2008 are stale because they were not first presented to the EEOC. Moreover, Plaintiff provides no evidence that the woman under the age of 50 was "similarly situated." *See Smith*, 351 F.3d at 196.

DHS treated her less favorably than younger employees, Plaintiff cannot defeat summary judgment. *See* Fed. R. Civ. P. 56(e) (to defeat summary judgment, Plaintiff must "set out specific facts showing a genuine issue for trial.")

In conclusion, the Court finds that Plaintiff has failed to provide any evidence that DHS treated her less favorably; therefore, Plaintiff cannot establish a prima facie case.

### b. Non-discriminatory reason and pretext

For the same reasons discussed in the Title VII claims, even if Plaintiff were able to establish a prima facie case, Plaintiff cannot show that Defendant's legitimate, non-discriminatory reasons were pretext for discrimination. *See Cal-Western Packaging Corp*, 602 F.3d at 378.

Defendant's legitimate, non-discriminatory response is that DHS did accommodate Plaintiff. *See* Mot. 24. Plaintiff must therefore show that the Defendant's stated reason was pretext for discrimination. *Jackson*, 619 F.3d at 466. However, Plaintiff fails to offer any evidence of pretext. *See* Pl.'s Resp. 35. Rather, Plaintiff simply states that "Defendant has failed to accommodate" her. *Id.* But Plaintiff cannot create an issue of fact with "unsubstantiated assertions." *See Little*, 37 F.3d at 1075. Moreover, Plaintiff has admitted DHS always accommodated her with a sufficient console, and that the door problem did not impact her work performance. *See* Pl.'s Facts ¶ 50, Pl.'s Decl. ¶ 113; Pl.'s Dep. 112:7-25.

In conclusion, the Court finds that Plaintiff's age discrimination claim fails even if Plaintiff presented a prima facie case.

### 5. Disability discrimination

Plaintiff also alleges DHS discriminated against her based on her disability in violation of the Rehabilitation Act. The Rehabilitation Act mirrors the American Disabilities Act of 1990 ("ADA") and provides protection for persons with a disability. *Kemp v. Holder*, 610 F.3d 231, 234-35 (5th Cir. 2010). A critical difference between the two statutes is that only the Rehabilitation Act applies to federal employees. *See* 42 U.S.C. § 12111(5)(B)(I). However, "the same legal standards, and the same remedies are available under both Acts." *Kemp*, 610 F.3d at 235. Accordingly, cases interpreting the ADA apply to the Rehabilitation Act. *See id.*

Because Plaintiff only offers circumstantial evidence of discrimination, the familiar *McDonnell Douglas* framework applies to her claim. *Chevron Phillips*, 570 F.3d at 615 (applying *McDonnell Douglas* approach to disability discrimination claim). Accordingly, Plaintiff must first establish a prima facie case. *See id.*

### a. Prima facie case

To establish a prima facie case of disability discrimination, Plaintiff must show that "(a) she is disabled, has a record of having a disability, or is regarded as disabled, (b) she is qualified for her job, (c) she was subjected to an adverse employment action on account of her disability or the perception of her disability, and (d) she was replaced by or treated less favorably than non-disabled employees." *Chevron Phillips*, 570 F.3d at 615.

Here, the parties do not dispute that Plaintiff is disabled and qualified for her job. *See* Mot. 14-15. However, Plaintiff fails to establish two of the necessary elements of a prima facie case. First, Plaintiff has failed to produce evidence that she suffered some adverse employment

action.  Second, Plaintiff has failed to produce evidence that she was treated less favorably than non-disabled employees.

### i.     Adverse employment action

The Fifth Circuit has a "strict interpretation of the adverse employment element." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004); *McKay v. Johanns*, 265 F. App'x 267, 268-69 (5th Cir. 2008) (applying Title VII caselaw on the adverse employment element to a Rehabilitation Act claim and citing *Pegram*, 361 F.3d at 282).  The employment action must consist of "ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating."  *Pegram*, 361 F.3d at 282 (internal quotations omitted).  If the action "does not affect job duties, compensation, or benefits," it is not an adverse employment action.  *Id.* (internal quotations omitted).

Here, Plaintiff has failed to produce evidence that she suffered an adverse employment action.  Plaintiff recites the same allegations in her complaint about the frequently inoperative west-side door and the non-accommodating consoles.  *See* Pl.'s Resp. 24-25.  Specifically, Plaintiff states the west-side door was frequently inoperative, and on less than ten occasions she was forced to switch consoles with a colleague because her assigned console would not adjust low enough.  *See* Pl.'s Facts ¶¶ 26, 40, 48.  However, none of these events qualify as an "adverse employment decision" because they are not like "hiring, granting leave, discharging, promoting, and compensating."  *See Pegram*, 361 F.3d at 282; *McKay*, 265 F. App'x at 268-69 (holding that moving a person with a disability to a cramped and isolated office did not constitute an adverse employment decision); *Hockman*, 407 F.3d at 326.

26

Plaintiff does include allegations of diminishing training opportunities, denying her leave, and diminished training opportunities that may qualify as an adverse employment action. *See* Pl.'s Decl. ¶ 20-22. However, as explained above, those allegations are stale because they were not presented to the EEOC. And moreover, Plaintiff has not cited to these events in support of her Response. *See* Pl.'s Resp. 2-3, 24-25.

In conclusion, the Court finds that Plaintiff has failed to provide evidence of adverse employment actions. Therefore, Plaintiff cannot establish a prima facie case for disability discrimination.

### ii. Treatment compared to other similarly situated employees

Beyond failing to provide evidence of an adverse employment action, Plaintiff fails to provide evidence that DHS treated her "less favorably than non-disabled employees." *See* *Chevron Phillips*, 570 F.3d at 615.

Here, Plaintiff cites to no evidence that she was treated less favorably than non-disabled employees. *See* Pl.'s Resp. 25. Instead, Plaintiff seems to rely on her contention that if she "was not African-American, female, disabled, and over the age of fifty," DHS would have consistently accommodated her with a properly functioning door and work console. Pl.'s Resp. 33. However, Plaintiff provides no specific evidence that DHS treated anyone more favorably.[9] Indeed, Plaintiff stated in her deposition that other DHS employees use the same west-side door

---

[9]     Although Plaintiff does not cite this incident in her Response, in Plaintiff's Declaration she states that DHS approved leave for a "white female, under the age of 50 [who] is able to walk" in July of 2008 while denying Plaintiff leave for a similar period. Pl.'s Decl. ¶ 73. However, as discussed earlier, allegations of denying leave from 2008 are stale because they were not first presented to the EEOC. Moreover, Plaintiff provides no evidence that the woman who "is able to walk" was "similarly situated." *See Smith*, 351 F.3d at 196.

and were inconvenienced when the door was broken.  Pl.'s Dep. 14:3-8.  Plaintiff does state that

DHS assigned two individuals to other work locations known as outstations because of their

"injury/temporary disability."  Pl.'s Decl. ¶ 69.  However, this bare allegation does not provide

any evidence suggesting the outstations are more accommodating.  *See id.*  The limited evidence

before the Court shows the opposite — in Plaintiff's deposition, she states that the outstations

were less accommodating because she sometimes could not open the doors at the outstations and

once sprained her finger there.  Pl.'s Dep. 89:25-91:1.

    In conclusion, the Court finds that Plaintiff has failed to provide any specific evidence

that DHS treated her less favorably.  Therefore, Plaintiff cannot establish a prima facie case.

### b.    Non-discriminatory reason and pretext

    For the same reasons discussed in the Title VII and ADEA claims, even if Plaintiff were

able to establish a prima facie case, Plaintiff cannot show that the Defendant's legitimate, non-

discriminatory reasons were pretext for discrimination.  *See Chevron Phillips*, 570 F.3d at 615.

    Defendant's legitimate, non-discriminatory response is that she did accommodate

Plaintiff.  *See* Mot. 24.  Plaintiff then must show that the Defendant's stated reason was pretext

for discrimination.  *Jackson*, 619 F.3d at 466.  However, Plaintiff fails to offer any evidence of

pretext.  *See* Pl.'s Resp. 35.  Rather, Plaintiff simply states that "Defendant has failed to

accommodate" her.  *Id.*  But Plaintiff cannot create an issue of fact with "unsubstantiated

assertions."  *Little*, 37 F.3d at 1075.  Moreover, Plaintiff has admitted DHS always

accommodated her with a sufficient console, and that the door problem did not impact her work

performance.  *See* Pl.'s Facts ¶ 50, Pl.'s Decl. ¶ 113; Pl.'s Dep. 112:7-25.

In conclusion, the Court finds that Plaintiff's age discrimination claim fails even if Plaintiff presented a prima facie case.

## C.     Failure to Accommodate

In addition to her discrimination claims, Plaintiff alleges that DHS failed to accommodate her in accordance with the Rehabilitation Act.[10]  *See generally* Compl.  To state a claim for a failure to accommodate, a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability.  *See EEOC v. Agro Distrib., LLC*, 555 F.3d 462, 471 (5th Cir. 2009); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005); *see also Mzyk v. N.E. Indep. Sch. Dist.*, No. 10-50037, 2010 WL 3926853, at * 2 n.3 (5th Cir. Sept. 30, 2010).

Defendant argues summary judgment is appropriate because Plaintiff has failed to provide evidence of the third element.  Specifically, Defendant argues that DHS has reasonably accommodated Plaintiff, and Plaintiff is not entitled to her preferred accommodation.  *See* Mot. 10-12.  Defendant supports this contention by first offering evidence that DHS has always accommodated Plaintiff with handicapped accessible doors.  *See id.* at 10.  Second, Defendant offers evidence that DHS met Plaintiff's needs for an adjustable console.  *See id.* at 12.

---

[10]     Plaintiff does not specifically list a claim under the Rehabilitation Act for a failure to accommodate.  *See generally* Compl.  Plaintiff phrases her disability claim as a discrimination claim, and not a failure to accommodate.  *See* Compl. 17.  However, throughout the factual allegation section, Plaintiff repeatedly alleges a failure to accommodate.  *See* Compl. 3-15. Moreover, both parties seem to assume Plaintiff has stated a failure to accommodate claim and have briefed the issue on summary judgment.  *See* Mot. 9-12; Pl.'s Resp. 13.  Finally, a failure to accommodate claim is a version of a discrimination claim because the concept of a reasonable accommodation claim is not explicit, but rather built into the definitions section of the statute.  *See* 42 U.S.C. § 12111(8)-(10); *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 399-403 (2002) (plurality opinion).  Given all of these factors, the Court construes the Complaint to include a failure to accommodate claim.

The Rehabilitation Act requires federal agencies and recipients of federal funding to reasonably accommodate persons with disabilities. *See Alexander v. Choate*, 469 U.S. 287, 300 (1985). These organization are not required "to make fundamental or substantial modifications to accommodate the handicapped." *Id.* (internal quotations and citations omitted). But the law does require reasonable accommodations. *Id.* As indicated by the plain meaning of the word reasonable, the law employs an objective standard to determine if the accommodation was reasonable. *See Burch v. Coca-Cola Co.*, 119 F.3d 305, 319 (5th Cir. 1997) (noting that failure to accommodate is an "objective inquiry").

The employer's accommodation "does not have to be the best accommodation possible, so long as it is sufficient to meet the job-related needs of the individual." 29 C.F.R. pt. 1630, App. § 1630.9 (internal punctuation omitted); *see Agro Distrib.*, 555 F.3d at 471. The focus is on providing the employee with the accommodations necessary for her to do her job. *See Barnett*, 535 U.S. at 399-403 (reasoning that an accommodation must be necessary for the employee to do her job and be reasonable); *Miranda v. Wisconsin Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996) (reasoning that the employer needs to make reasonable accommodations "to allow the employee to perform the functions essential to his position"). The Fifth Circuit has made clear that the law "provides a right to reasonable accommodation, not to the employee's preferred accommodation." *Agro Distrib.*, 555 F.3d at 471.

Plaintiff fails to show that DHS failed to reasonably accommodate her disability in regard to the door and consoles.

### 1. The door

Here, Plaintiff fails to show that DHS did not reasonably accommodate her regarding the door. Plaintiff contends, and Defendant does not dispute, that the west-side door was frequently inoperative. *See* Pl.s Facts ¶ 26; Mot. 10. However, DHS's building has two other handicapped accessible doors — the front and back doors. *See* Pl.'s Facts ¶¶ 23, 29-30. And therefore, both parties agree that DHS has always provided Plaintiff with handicapped accessible doors to enter and exit from her place of work. *See id.* ¶¶ 23, 29-30.

Plaintiff's claim rests upon her allegation that the one frequently inoperative door makes DHS *per se* in violation of its obligation to provide reasonable accommodation. *See* Pl.'s Resp 14-15. This argument fails because there is no evidence that suggests Plaintiff needed all three entrances to be in operation for her to successfully do her job. *See Barnett*, 535 U.S. at 399-403; *Agro Distrib.*, 555 F.3d at 471; 29 C.F.R. pt. 1630, App. § 1630.9. In fact, the evidence shows the opposite. Plaintiff states she was able "to perform to the best of my abilities" despite the problematic west-side door. Pl.'s Decl. ¶ 113. Moreover, Plaintiff states she had good evaluations and was even promoted during this time. *See* Pl.'s Dep. 112:7-25. In sum, Plaintiff has no evidence that the one inoperative door out of three prevented her from performing her job successfully, and thus Plaintiff cannot fulfill a necessary element of a failure to accommodate claim. *See Barnett*, 535 U.S. at 399-403; *Miranda*, 91 F.3d at 1017; *Agro Distrib.*, 555 F.3d at 471 (reasoning that cooling breaks for an employee with an inability to perspire was a reasonable accommodation because it allowed the employee to continue his job of manual labor.)

Plaintiff attempts to create a factual dispute by arguing that the other doors are not safe for her because the ramps are steep and the inner door is heavy. *See id.*; Pl.'s Resp. 15.

However, Plaintiff seems to contradict herself by stating that she is "not disputing [the] reasonable accommodations of the ramps." *See id.* ¶ 25. Moreover, Defendant has offered evidence, and Plaintiff does not dispute, that all the ramps at DHS's facility meet the Uniform Federal Accessibility Standards ("UFAS"). *See id.* ¶¶ 19, 26. UFAS are detailed standards mandated for government building constructed after 1992. *See* 28 C.F.R. § 35.151(c). Additionally, Plaintiff concedes that at least one other person who uses a wheelchair is able to use the other doors safely. *See* Pl.'s Facts ¶¶ 30, 35. Finally, Defendant has offered evidence, and Plaintiff does not dispute that the inner-door requires less than one pound of pressure. *See id.* ¶ 24. In sum, Plaintiff has no evidence to contradict Defendant's evidence that the other two doors were an objectively reasonable accommodation, and thus her claim fails. *See Agro Distrib.*, 555 F.3d at 471; *Burch v. Coca-Cola Co.*, 119 F.3d 305, 319 (5th Cir. 1997); *Little*, 37 F.3d at 1075 (holding that the court resolves factual controversies in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts")

In conclusion, the Court finds that Plaintiff has failed to provide evidence that DHS failed to reasonably accommodate her in regard to the west-side door.

### 2. Work consoles

Likewise, Plaintiff has no evidence that DHS failed to reasonably accommodate her in regard to her work console. The heart of Plaintiff's claim is that on less than ten occasions over a nine month period, she was originally seated at a console that did not adjust low enough for her. *See* Pl.'s Resp. 27-33. However, Plaintiff concedes she "was accommodated" by having a co-worker switch consoles with her. *See* Pl.'s Facts ¶ 50.

Plaintiff attempts to create a factual dispute by arguing DHS should have assigned her to a specific console instead of having her switch with colleagues. *See* Pl.'s Resp. 21. According to Plaintiff, assigning work consoles was a two-step process. *See* Pl.'s Facts ¶¶ 38-44, 48, 50. A supervisor first assigned each employee to a "position." *See id.* ¶ 43. Each position consisted of one or more work consoles. *See id.* ¶ 42. If the position had more than one console, then the employee who arrived earlier could choose her preferred console. *See id.* ¶ 47. On less than ten occasions, this process led to Plaintiff sitting at a console that did not adjust low enough to accommodate her. *See id.* ¶ 48. However on each of those times, Plaintiff moved to a sufficiently adjustable console. *See id.* ¶ 50.

Although assigning Plaintiff a specific console is a reasonable solution, the Rehabilitation Act does not require DHS to provide the "employee's preferred accommodation." *Agro Distrib.*, 555 F.3d at 471; *see* 29 C.F.R. pt. 1630, App. § 1630.9. Here, every time Plaintiff needed to switch to an accommodating console, she was able to, and the procedure was effective. *See* Pl.'s Facts ¶ 50. Moreover, Plaintiff provides no evidence that the switching consoles procedure caused her to be unable to perform her job. *See Agro Distrib.*, 555 F.3d at 471. Even Plaintiff concedes that she "was accommodated." Pl.'s Facts ¶ 50.

In conclusion, the Court finds that Plaintiff has failed to present evidence that DHS did not reasonably accommodate Plaintiff by employing a procedure that always ensured Plaintiff had an accommodating work console.

### D.     Retaliation

Finally, Defendant argues that Plaintiff's retaliation claim also cannot survive summary judgment. *See* Mot. 19. Plaintiff appears to state that after contacting the EEOC, supervisors

and co-workers harassed her.[11]  *See* Pl.'s Resp. 25-34.  Moreover, Plaintiff appears to state that

DHS continued to not accommodate her with a functioning handicapped accessible door and

adjustable work console.  *See id*.

Title VII protects employees from retaliation by their employer for exercising their rights

under Title VII.  *See* 42 U.S.C. § 2000e-3(a).  The statute states:

> It shall be an unlawful employment practice for an employer to discriminate
> against any of his employees . . . because he has opposed any practice made an
> unlawful employment practice by this title or because he has made a charge,
> testified, assisted, or participated in any manner in an investigation, proceeding, or
> hearing under this title.

*Id.*

When a plaintiff offers circumstantial evidence of retaliation, a modified version of the

familiar *McDonnell Douglas* approach applies.  *McCoy*, 492 F.3d at 556-57.  First, the plaintiff

must establish a prima facie case of retaliation.  *Id.*  Second, if the plaintiff establishes a prima

facie case, the defendant must articulate a legitimate, non-retaliatory reason for the employment

action at issue.  *Id.*  Third, assuming the defendant meets this burden, the plaintiff must show that

the defendant's legitimate, non-retaliatory reasons were pretext for the actual retaliatory reason.

*Id.*  Here, Plaintiff offers circumstantial evidence so the Court proceeds to examine the prima

facie case.

### 1.      Prima facie case

To establish a prima facie case of retaliation, plaintiff must show (1) she participated in

an activity protected by Title VII; (2) her employer took an adverse employment action against

her; and (3) a causal connection exists between the protected activity and the adverse

---

[11]      Deciphering Plaintiff's arguments is difficult because counsel's copying and
pasting allegations from the Complaint provides little organization or structure.
*See generally* Pl.'s Resp. to Def.'s Mot. for Summ. J. 25-34; Compl. 2-14.

employment action.  *Id.*  Here, Plaintiff fails to present a prima facie case.  Although Plaintiff

participated in an activity protected by Title VII by filing an EEOC charge, *see Burlington N.,*

548 U.S. at 60, Plaintiff has failed to produce evidence of an adverse employment action.

In contrast to a Title VII discrimination claim, adverse employment actions are more

broadly construed in a retaliation claim.  *Id.* at 60, 66-67.  The purpose of a retaliation claim

requires a different standard.  *Id.* at 62-67.  Discrimination claims are designed to deter and

punish acts of discrimination.  *Id.* at 63.  In contrast, the anti-retaliation provision aims to ensure

employees are not discouraged from "efforts to secure or advance enforcement of the Act's basic

guarantees."  *Id.*  Therefore, the law must prohibit a greater scope of adverse acts because

otherwise employees will feel less free to seek protection of the law.  *Id.* at 63-68.

Although the scope of protection is broader, the harm must be "materially adverse."  *Id.* at

68.  That means "the employer's actions must be harmful to the point that they could well

dissuade a reasonable worker from making or supporting a charge of discrimination."  *Id.*

Materiality is key because "it is important to separate significant from trivial harms."  *Id.*  Title

VII "does not set forth a general civility code for the American workplace."  *Id.* (internal

quotations omitted).  "[P]etty slights, minor annoyances, and simple lack of good manners" do

not qualify because they will not deter employees from reporting misconduct.  *Id.*

Here, Plaintiff appears to contend the retaliation occurred after filing her EEOC charge.[12]

*See* Pl.'s Resp. 26.  However, Plaintiff fails to provide evidence that DHS took any materially

_____

[12]     Plaintiff's Response is unclear on what triggered the retaliation.  Plaintiff states:
"The filing [sic] an EEOC complaint and requesting accommodations as stated
above subjected Plaintiff to continued harassment." Pl.'s Resp. 26.  And in
Plaintiff's argument about causation, counsel just refers to the event as the
"protected activity" and never identifies the specific event. *See id.* at 34. Based
on the general arguments presented, it appears to the Court that Plaintiff is
referring to the EEOC charge that preceded this lawsuit.

adverse actions. Plaintiff contends she was subject to harassment: she was "yelled at, unprofessionally corrected, belittled and scolded by her first line supervisor." Pl.'s Resp. 26. However, the Fifth Circuit has held that being "chastised by superiors and ostracized by co-workers . . . do not rise to the level of material adversity" needed to establish a retaliation claim. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009); *see also Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) (stating that intimidating an employee by staring and yelling at him was not enough for a retaliation claim). Therefore, Plaintiff cannot use these allegations as the basis for a retaliation claim.

Plaintiff also states that DHS retaliated by continuing to not ensure the west-side door always functioned properly. *See* Pl.'s Resp. 25-34. However, as discussed above, DHS provided a reasonable accommodation to Plaintiff by ensuring Plaintiff always had an available handicapped accessible entrance. *See* Pl.'s Facts ¶¶ 23, 50. Given that Plaintiff was unable to establish a failure to accommodate claim, Plaintiff must provide some additional evidence that a reasonable person would find that failing to perfectly repair one door would "dissuade a reasonable worker from making or supporting a charge of discrimination." *See Burlington N.*, 548 U.S. at 68; *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1265 (10th Cir. 2001) (reasoning that court's denial of a "reasonable accommodation claims disposes of" the retaliation claim based on the same facts); *West v. N.M. Taxation and Revenue Dept*, 757 F. Supp. 2d 1065, 1121 (D.N.M. 2010) ("Granting a reasonable accommodation cannot be a materially adverse employment action."); *Picard v. St. Tammany Parish Hosp.*, 611 F. Supp. 2d 608, 626 (E.D. La. 2009) (similar reasoning). Although there may be unusual cases, an employer does not typically retaliate against an employee with a reasonable accommodation. *See West*, 757 F. Supp. 2d at 1121 (going further and holding that a reasonable accommodation can never be an adverse

employment action).  Therefore, Plaintiff needs some additional evidence to show that a

reasonable person would not make a charge of discrimination after the employer provided a

reasonable accommodation, but failed to ensure that one door was always operational.

Plaintiff though has no such evidence.[13]  In fact, Plaintiff provides evidence that a

reasonable person would be encouraged to file a grievance because she states that "[a]fter filing a

grievance [regarding the doors], [DHS was] much more responsive."  Pl.'s Resp. 5.  Moreover,

Plaintiff states that DHS "frequently" repaired the west-side door, and then replaced it.  Pl.'s

Facts ¶¶ 27-28.  This evidence suggests that the filing of Plaintiff's EEOC charge encouraged

DHS to fix and then replace the door, and thus Plaintiff's claim is illogical.

Plaintiff also points to the continuing problems with the consoles as materially adverse

employment actions in retaliation for filing the EEOC charge.  Pl.'s Resp. 26.  According to

Plaintiff, the problem with the consoles was DHS's system for moving Plaintiff.  *See* Pl.'s Resp.

26-34.  Plaintiff states that switching consoles on less than ten occasions caused "animosity and

prejudicial feelings amongst her co-workers."  Compl. 10; Pl.'s Facts ¶¶ 40, 48, 51.  However,

the Fifth Circuit has held that being "ostracized by co-workers . . . [does] not rise to the level of

material adversity" needed to establish a retaliation claim.  *Stewart*, 586 F.3d at 331.  Therefore

isolated incidents that may have caused animosity and prejudicial feelings are generally not

enough to "dissuade a reasonable worker from making or supporting a charge of discrimination."

*See Burlington N.*, 548 U.S. at 68 (2006); *Stewart*, 586 F.3d at 331.

---

[13]  Plaintiff also states that someone "deliberately turned off [the automatic door opener] numerous times in order to prevent me from entering."  Pl.'s Resp. 26. However, Plaintiff does not know who did this and cannot establish when in the last ten years it happened.  Pl.'s Dep. 106:19-108:25.  Without providing at least a general time-period or some details, Plaintiff cannot defeat summary judgment. *See* Fed. R. Civ. P. 56(e) (To defeat summary judgment, Plaintiff must "set out specific facts showing a genuine issue for trial.")

In conclusion, the Court finds that Plaintiff has failed to establish a prima facie case because Plaintiff failed to provide sufficient evidence of materially adverse actions by Defendant.

## 2. Non-discriminatory reason and pretext

Even if Plaintiff were able to establish a prima facie case, Plaintiff provides no evidence that Defendant's non-retaliatory reason was pretext for retaliation. If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-retaliatory reason for the employment action at issue. *McCoy*, 492 F.3d at 556-57. Assuming the defendant meets this burden, the plaintiff must show that the defendant's legitimate, non-discriminatory reasons were pretext for the actual retaliatory reason. *Id.*

Defendant's non-retaliatory reason is that DHS did not retaliate because DHS did in fact accommodate Plaintiff. *See* Mot. 24. Specifically, Defendant has presented evidence that there were always two or three handicapped accessible doors available to Plaintiff, and DHS frequently repaired the malfunctioning west-side door. *See* Def.'s Facts ¶ 22; Pl.'s Facts ¶¶ 22, 27. Moreover, every time Plaintiff was unsatisfied with her work console, she was able to switch to a more accommodating console. *See* Pl.'s Facts ¶ 50. Therefore, Defendant has articulated a legitimate, non-retaliatory reason for the employment action at issue.

Given that Defendant has met its burden, Plaintiff must show that the Defendant's explanation was pretext for the actual retaliatory reason. *McCoy*, 492 F.3d at 556-57. However, Plaintiff fails to offer any evidence of pretext. Rather, she simply states that "Defendant has failed to accommodate" her. Pl.'s Resp. 35. But Plaintiff cannot create an issue of fact with "unsubstantiated assertions." *Little*, 37 F.3d at 1075. Moreover, Plaintiff has admitted DHS always accommodated her with a sufficient console, and that the door problem did not impact her

work performance.  *See* Pl.'s Facts ¶ 50, Pl.'s Decl. ¶ 113; Pl.'s Dep. 112:7-25.  Simply put, Defendant did not retaliate against Plaintiff.  Defendant has repeatedly accommodated Plaintiff's needs, and DHS promoted her just months after filing the EEOC charge.  *See* Pl.'s Facts ¶¶ 2, 17.

In conclusion, the Court finds that Plaintiff's retaliation claim fails as a matter of law even if Plaintiff presented a prima facie case.

## IV.     CONCLUSION

In summary, none of Plaintiff's claims can survive a motion for summary judgment. Plaintiff's hostile work environment claim fails because her claims to do not rise to the level of an objectively hostile work environment.  The discrimination claims based on race, gender, age and disability all fail because Plaintiff cannot make out a prima facie case or show pretext. Plaintiff's failure to accommodate claim fails because Plaintiff cannot show that the DHS failed to reasonably accommodate her.  Finally, the retaliation claim fails because Plaintiff cannot make out a prima facie case or show pretext.  Defendant is therefore entitled to judgment as a matter of law.  Accordingly, Defendant's Motion for Summary Judgment, ECF No. 29, is **GRANTED**.

Given that the Court is granting Defendant's Motion for Summary Judgment relying in part on the evidence that Defendant sought to strike, the Defendant's Motion to Strike is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court shall close the case.

**SO ORDERED**.

**SIGNED** on this 18th day of October, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE